OPINION
{¶ 1} Appellant Charles Lantz appeals the decision of the Fairfield County Court of Common Pleas on the basis that his convictions for aggravated theft, passing bad checks, theft and grand theft are against the manifest weight and sufficiency of the evidence. Appellant also claims error with the trial court's sentencing. The following facts give rise to this appeal.
{¶ 2} On October 12, 1994, Charles and Judy Smith retained appellant, a licensed attorney,[1] to represent them in a personal injury case arising from an automobile accident that occurred a year earlier. Mr. and Mrs. Smith signed a contingent fee contract with appellant. Appellant thereafter negotiated settlements of $100,000 from Allstate Insurance Company and $200,000 from Celina Mutual Insurance. On February 11, 1998, appellant deposited the check from Allstate Insurance Company into his IOLTA account with First Bremen Bank. At that time, appellant issued a check, to the Smiths, in the amount of $60,000, as partial distribution of their share of the settlement.
{¶ 3} On March 18, 1998, appellant deposited the check from Celina Mutual Insurance into his IOLTA account with First Breman Bank. Appellant informed the Smiths that he would attempt to negotiate a reduction in the amount of some of their medical bills they had incurred as a result of the accident and would pay the balances due from their remaining funds in his trust account. The Smiths continued to receive bills from their medical creditors. Although the Smiths contacted appellant's office several times, he did not return their telephone calls. Further, the Smiths were unaware that from February 18, 1998, until November 23, 1998, appellant wrote twenty-three checks and made one transfer from his IOLTA account containing the Smiths' funds. This amount exceeded the $100,000 contingent fee that appellant was entitled to pursuant to his agreement with the Smiths.
{¶ 4} The Smith's largest debt for medical bills was to their medical insurance carrier, Ohio Carpenter's Health Welfare Fund ("Ohio Fund"). Teresa Pofok, the attorney who represented Ohio Fund in its subrogation claim against the Smiths, attempted to contact appellant by letter and telephone, to no avail. Attorney Pofok eventually contacted the Fairfield County Clerk of Courts and learned that the Smith's case had been settled and dismissed and that medical expenses were included in the settlement.
{¶ 5} On November 6, 1998, Attorney Pofok sent a letter to appellant and the Smiths in which she indicated Ohio Fund would file suit in fifteen days if payment was not received on its subrogation claim. Appellant met with the Smiths and agreed to provide copies of checks to the creditors. Appellant drafted a check for $76,188 and paid four medical bills including the $59,000 owed to Ohio Fund. However, appellant did not contact Attorney Pofok, as he promised the Smiths he would do, to discuss reduction of the debt owed to Ohio Fund.
{¶ 6} The check for Ohio Fund was presented to First Bremen Bank on December 23 and 28, 1998. At that time, appellant's account had a balance of $41,985.12. Ned Hinton, vice-president of First Bremen Bank, learned of the overdraft on December 24, 1998, and contacted appellant. Appellant informed Mr. Hinton that the check should not have been presented and asked that the check be returned.
{¶ 7} After the check was returned for insufficient funds, Attorney Pofok sent appellant a letter dated January 7, 1999, in which she indicated the check had been dishonored. After the check was returned for insufficient funds, appellant would not return the telephone calls of either Attorney Pofok or the Smiths. In early February 1999, the Lancaster Police Department was contacted. On February 18, 1999, Captain Bailey contacted First Bremen Bank and learned that the account balance was approximately $18,000 short of covering the check. As a result, appellant was arrested and a charge of passing bad checks was filed in municipal court. Following his arrest, appellant deposited sufficient funds in the account to cover the check.
{¶ 8} The second incident giving rise to this appeal occurred in January 1999 when Phil Kaiser retained appellant to represent him regarding injuries he suffered in an accident in July 1997. Mr. Kaiser signed a contingent fee contract. Subsequently, appellant negotiated a settlement, as well as a wrongful death settlement for the death of Mr. Kaiser's father, who died as a result of the accident.
{¶ 9} On February 22, 1999, three checks were deposited into appellant's IOLTA account with Firstar Bank. The checks were from: Leader Insurance in the amount of $9,333.34; State Farm Insurance in the amount of $34,833.34 and Farthing Harsha in the amount of $5,000. The checks totaled $49,166.68. On March 12, 1999, appellant drafted a check for Mr. Kaiser in the amount of $25,000. After receiving this check, Mr. Kaiser requested that appellant give him the remainder of his money. Finally, on October 9, 2000, appellant drafted Mr. Kaiser a check in the amount of $4,750 on the Firstar Bank IOLTA account. Appellant informed Mr. Kaiser that was the remainder of the money he was entitled to receive.
{¶ 10} Mr. Kaiser attempted to cash the check at the Logan branch of the Firstar Bank and was informed that insufficient funds were in the account to cover it. Mr. Kaiser eventually went to the Lancaster Police Department to report this incident. Thereafter, appellant received a cashier's check in the amount of $4,750.
{¶ 11} As noted above, during this time period, appellant had two IOLTA accounts. Appellant used the Firstar IOLTA account as an office and personal account. On several occasions, appellant paid his secretary's wages from this account. Appellant also gave his wife money from this account and paid bills for AEP, Ameritech and Web TV.
{¶ 12} As a result of these incidents, the Fairfield County Grand Jury indicted appellant for one count of aggravated theft, two counts of passing bad checks, one count of theft and one count of grand theft. Appellant waived his right to a jury trial and this matter proceeded to a bench trial on April 11, 2001. At the conclusion of the evidence, the trial court took the matter under consideration and on June 13, 2001, issued a written verdict and judgment entry finding appellant guilty as charged in the indictment.
{¶ 13} Appellant appeared for sentencing on August 8, 2001. The trial court imposed a sixty-day jail sentence, a term of community control for three years and ordered restitution. Appellant timely filed his notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 14} "I. THE TRIAL COURT ERRED FINDING THE DEFENDANT GUILTY AS TO COUNT ONE (SIC) IS NOT SUPPORTED BY THE QUANTUM OF EVIDENCE REQUIRED BY LAW IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW."
 {¶ 15} "II. THE TRIAL COURT HAVING FOUND THE AMOUNT ALLEGED TO HAVE BEEN SUBJECT TO THE THEFT OFFENSE TO BE $59,000.00, THE FINDING THAT THE DEFENDANT WAS GUILTY OF A THIRD DEGREE FELONY IS ERROR AS A MATTER OF LAW."
 {¶ 16} "III. THE TRIAL COURT FINDING THE DEFENDANT GUILTY TO THE CHARGE OF PASSING BAD CHECKS IN COUNT TWO IS NOT SUPPORTED BY THE QUANTUM OF EVIDENCE REQUIRED BY LAW IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW."
 {¶ 17} "IV. THE TRIAL COURT FINDING THE DEFENDANT GUILTY OF THEFT AS TO COUNT NO. THREE IS NOT SUPPORTED BY THE QUANTUM OF EVIDENCE REQUIRED BY LAW, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW."
 {¶ 18} "V. THE TRIAL COURT FINDING THE DEFENDANT GUILTY OF PASSING BAD CHECKS AS SET FORTH IN COUNT NO. FOUR IS NOT SUPPORTED BY THE QUANTUM OF EVIDENCE REQUIRED BY LAW IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW."
 {¶ 19} "VI. THE TRIAL COURT FINDING THE DEFENDANT GUILTY OF THEFT, A FOURTH DEGREE FELONY, AS SET FORTH IN COUNT FIVE IS NOT SUPPORTED BY THE QUANTUM OF EVIDENCE REQUIRED BY LAW IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW."
 I
{¶ 20} Appellant claims, in his first assignment of error, the trial court's verdict finding him guilty of theft[2], as charged in count one of the indictment, is against the manifest weight and sufficiency of the evidence. We disagree.
{¶ 21} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175. See also, State v. Thompkins 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. It is based upon these standards that we review appellant's first assignment of error.
{¶ 22} We begin by noting the trial court made a clerical error when it found appellant guilty of section (B)(3) of R.C. 2913.01, a section that does not exist in the Revised Code. The superseding indictment charged appellant, in count one, with a violation of R.C.2913.02(A)(2). We believe this is the statute the trial court meant to refer to as the trial court specifically found appellant guilty of count one in the verdict and judgment entry.
{¶ 23} R.C. 2913.02(A)(2) provides as follows:
{¶ 24} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services of any in the following ways:
* * *
 {¶ 25} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;"
{¶ 26} Appellant claims the evidence presented by the state does not support a conviction for theft pursuant to R.C. 2913.02(A)(2). Specifically, appellant contends funds were initially distributed to the Smiths and Mr. Smith gave appellant permission to retain some of the funds to pay medical bills incurred as a result of the accident. Appellant also maintains he is not guilty of aggravated theft because the Smiths eventually received all of the funds to which they were entitled and, as promised, he paid the balance of the Smiths' medical expenses from these funds.
{¶ 27} There is no dispute that the Smiths gave appellant their consent to retain funds, negotiate reductions in medical bills, pay medical bills and take the fee to which he was entitled. However, at trial, the evidence established that appellant acted beyond the scope of the Smiths' consent. Appellant deposited the two settlement checks in February and March 1998. See State's Exhibits 8 and 10. From the time the first check was deposited in February 1998 until November 23, 1998, appellant drafted twenty-three checks from the IOLTA account containing the Smiths' money and made one transfer from the account. See State's Exhibits 8 and 10. This activity exceeded the $100,000 contingent fee to which appellant was entitled to receive.
{¶ 28} Also, Attorney Pofok testified at trial that the Ohio Fund had a standard policy of deducting one-third from subrogation claims. Tr. at 119-120. However, appellant never asked for a reduction of the medical bills and instead sent a check, in the amount of $59,000, to Ohio Fund. Id. at 120-121. There were insufficient funds in the account to cover the check and appellant continued to hold these funds until he was charged with a crime.
{¶ 29} Based upon this evidence, we conclude the trial court's decision finding appellant guilty of grand theft, as contained in count one of the indictment, was not against the manifest weight and sufficiency of the evidence. Appellant clearly acted beyond the scope of the Smiths' consent when he retained possession of the settlement funds and used more than the agreed retainer fee for his own personal expenses.
{¶ 30} Appellant also contends, under this assignment of error, that the trial court erred when it failed to make specific findings as to the elements of the offense of grand theft. We find the trial court did not err when it made a general finding of guilt as Crim.R. 23(C) permits the court, in a case without a jury, to make a general finding.
{¶ 31} Appellant's first assignment of error is overruled.
 II
{¶ 32} Appellant contends, in his second assignment of error, the trial court erred when it found him guilty of a third degree felony as it pertains to count one of the indictment for aggravated theft. We agree.
{¶ 33} The trial court determined the amount involved, in count one, for the aggravated theft offense was $59,000. However, in the verdict and judgment entry the trial court sentenced appellant to a third degree felony, which is in contravention of R.C. 2913.02(B). This statute provides, in pertinent part:
 {¶ 34} "(B) * * * If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree."
{¶ 35} Thus, based upon the above language, since the trial court determined the amount of the theft was $59,000, the trial court should have found appellant guilty of a fourth degree felony and not a third degree felony. Appellant's sentence does not require modification because the trial court imposed a community control sanction and did not impose a prison term. Accordingly, appellant's conviction for grand theft, in count one of the indictment, is modified to reflect a conviction for a fourth degree felony and not a third degree felony.
{¶ 36} Appellant's second assignment of error is sustained.
 III
{¶ 37} In his third assignment of error, appellant maintains the trial court's verdict finding him guilty of passing bad checks, as charged in count two of the indictment, is against the manifest weight and sufficiency of the evidence. We disagree.
{¶ 38} The crime of passing bad checks is contained in R.C.2913.11(A) and provides as follows:
 {¶ 39} "(A) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored."
{¶ 40} Appellant sets forth several arguments in support of this assignment of error. First, appellant contends the trial court improperly found that he violated R.C. 2913.02(B) as to the second count of the indictment. We agree. R.C. 2913.02(B) is the sentencing section for the offense of theft. A review of the verdict and judgment entry indicates the trial court committed a clerical error in referring to R.C. 2913.02(B), as the trial court specifically found appellant guilty of count two of the indictment for passing bad checks, which is a violation of R.C. 2913.11.
{¶ 41} Appellant next maintains the trial court erred when it failed to make specific findings of fact as to the elements of the offense of passing bad checks. However, as noted in the second assignment of error, because this was a trial to the bench, the trial court was permitted to make a general finding.
{¶ 42} Appellant also contends the evidence at trial did not support a finding that he operated with intent to defraud or knowledge that the $59,000 check issued to Ohio Fund would be dishonored. Pursuant to DR 9-102(B)(3), appellant, as a licensed attorney, was required to maintain complete records of all funds of his clients that came into his possession and render appropriate accounts regarding these funds. On cross-examination, appellant admitted that he did not have complete records of his IOLTA account with Bremen Bank as he informed Ned Hinton, vice-president of the bank, that the check should not have been issued until he got an accounting of all of his personal injury cases. Tr. at 439. Clearly, appellant knew there were problems with the account.
{¶ 43} Further, on December 24, 1998, appellant received notice that the $59,000 check was dishonored. Appellant also received telephone calls from Mrs. Smith and Attorney Pofok about the dishonored check. Despite these notices, appellant took no action to pay the check until his arrest in February 1999.
{¶ 44} Finally, appellant argues there was a lack of proof of intent to defraud. R.C. 2913.01(B) defines "defraud" as:
 {¶ 45} "(B) * * * to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another."
{¶ 46} We find the evidence in this case supports the conclusion that appellant acted with intent to defraud. Appellant attempted to defraud Ohio Fund of $59,000 despite the fact that Attorney Pofok and Mrs. Smith contacted him about the dishonored check. Thus, appellant's actions were beneficial to himself and detrimental to the Smiths and Ohio Fund. Accordingly, the trial court's verdict finding appellant guilty of passing bad checks, as contained in count three of the indictment, is not against the manifest weight and sufficiency of the evidence.
{¶ 47} Appellant's third assignment of error is sustained as it pertains to the reference of the improper statute.
 IV
{¶ 48} Appellant maintains, in his fourth assignment of error, the trial court's verdict finding him guilty of theft, as charged in count three of the indictment, is against the manifest weight and sufficiency of the evidence. We disagree.
{¶ 49} The indictment charged appellant with a violation of R.C.2913.02(A)(2). In support of this assignment of error, appellant first contends the trial court failed to make specific findings of fact to support its conclusion that appellant violated the theft statute. However, as noted above, Crim.R. 23(C) permits a general finding.
{¶ 50} Appellant next maintains he paid Mr. Kaiser the money owed to him within twenty-four hours of receiving notice that the $4,750 check drawn on the Firstar account had been dishonored. Although appellant paid Mr. Kaiser this money, State's Exhibit 13 establishes that appellant never paid Mr. Kaiser $4,027.79, which was the amount of money remaining in appellant's possession from the original settlement.
{¶ 51} Based upon the above evidence, the trial court's verdict finding appellant guilty of theft, as charged in count three of the indictment, was not against the manifest weight and sufficiency of the evidence.
{¶ 52} Appellant's fourth assignment of error is overruled.
 V
{¶ 53} In his fifth assignment of error, appellant contends the trial court's verdict finding him guilty of theft, as charged in count four of the indictment, is against the manifest weight and sufficiency of the evidence. We disagree.
{¶ 54} Count four of the indictment refers to a check appellant issued from the Firstar Bank account in the amount of $4,750. Appellant maintains the state presented no evidence at trial that he knew the check would be dishonored or that he operated with an intent to defraud. Instead, appellant claims he believed the Firstar account had sufficient funds and a $2,500 reduction in the account was the result of a returned item. Appellant also maintains Firstar Bank never dishonored the $4,750 check.
{¶ 55} The evidence presented at trial indicates the Firstar Bank account had insufficient funds to cover the $4,750 check, even if the $2,500 check deposited into the account had not been returned. The evidence also indicates Mr. Kaiser contacted appellant several times about the dishonored check. State's Exhibit 16. Further, Mr. Kaiser's settlement funds were not in the Firstar Bank account as appellant had deposited the funds, in March 1999, into the First Bremen Bank account. Finally, Carol Goss, an employee of Firstar Bank, testified that the check was dishonored when presented by Mr. Kaiser, however, it was not stamped insufficient funds because Mr. Kaiser presented it in person rather than depositing it to his own account.
{¶ 56} We conclude the trial court's verdict finding appellant guilty of passing bad checks, as it pertains to count four of the indictment, is not against the manifest weight or sufficiency of the evidence. However, we do agree with appellant's argument under R.C.2945.75(A)(2), which provides as follows:
 {¶ 57} "(A) When the presence of one or more additional elements makes an offense one of more serious degree:
* * *
 {¶ 58} "(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
{¶ 59} Appellant argues that because the trial court did not make a finding as to the degree of the crime, the verdict constitutes a finding of the least degree of the crime charged. Under R.C. 2913.11(D), the least degree that may be charged is a first degree misdemeanor. Because the trial court did not state, in the verdict and judgment entry, the degree of the crime charged for passing bad checks, we find the conviction is for a first degree misdemeanor and modify appellant's conviction accordingly. The trial court did not sentence appellant to a term of imprisonment as to count four so there is no error in the sentence.
{¶ 60} Appellant's Fifth Assignment of Error is sustained as it pertains to the degree of the offense.
 VI
{¶ 61} In his final assignment of error, appellant maintains the trial court's verdict finding him guilty of grand theft, as contained in count five of the indictment, is against the manifest weight and sufficiency of the evidence. We disagree.
{¶ 62} Appellant again challenges the fact that the trial court did not make specific findings of fact. As noted above, this argument lacks merit under Crim.R. 23(C). Based upon the evidence presented by the state, the trial court's verdict is not against the manifest weight and sufficiency of the evidence. Appellant used the Firstar IOLTA account for his own personal expenses. Appellant also retained funds that rightfully belonged to his clients.
{¶ 63} However, as with the above assignment of error, the trial court did not make a finding as to the degree of the offense. Therefore, under R.C. 2945.75(A)(2), appellant must be sentenced to the least degree of theft, which is a first degree misdemeanor. Accordingly, appellant's conviction for grand theft, in count five of the indictment, is modified to reflect a conviction for a first degree misdemeanor. There is no need to re-sentence appellant as the trial court did not impose a prison term.
{¶ 64} Appellant's Sixth Assignment of Error is sustained as it pertains to the degree of the offense.
{¶ 65} For the foregoing reasons, the decision of the Court of Common Pleas, Fairfield County, Ohio, is hereby affirmed in part and reversed in part.
By: WISE, J. EDWARDS, J., concurs separately. HOFFMAN, P.J., concurs in part and dissents in part.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed in part and reversed in part. Appellant's conviction for grand theft, in count one of the indictment, is modified to reflect a conviction for a fourth degree felony. Appellant's conviction for passing bad checks, in count four of the indictment, is modified to reflect a conviction for a first degree misdemeanor. Appellant's conviction for grand theft, in count five of the indictment, is modified to reflect a conviction for a first degree misdemeanor.
Costs to be split equally between the parties.
[1] On May 6, 2002, the Ohio Supreme Court indefinitely suspended appellant from the practice of law. See Disciplinary Counsel v. Lantz,95 Ohio St.3d 132, 2002-Ohio-1757.
[2] The trial court improperly concluded that appellant was guilty of aggravated theft as to count one. Instead, due to the dollar amount involved, appellant committed the offense of grand theft and should have been sentenced to a fourth degree felony. See assignment of error number two.